**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| LTL MANAGEMENT LLC,[1] | ) Case No. 21-30589 (JCW) |
| Debtor. | ) Re: Docket Nos. 44, 45 53, 76 |

**AYLSTOCK, WITKIN, KREIS & OVERHOLTZ PLLC'S (I) OBJECTION TO DEBTOR'S EX PARTE MOTION FOR AN EMERGENCY HEARING; (II) PRELIMINARY RESPONSE TO DEBTOR'S EMERGENCY MOTION TO ENFORCE THE AUTOMATIC STAY; AND (III) JOINDER IN RELATED FILINGS**

Aylstock, Witkin, Kreis & Overholtz, PLLC ("AWKO"), on behalf of thousands of holders of talc personal injury claims (the "AWKO Claimants"), objects to the *Debtor's Ex Parte Motion for Entry of an Order Scheduling an Emergency Hearing on the Motion to Enforce the Automatic Stay* [Docket No. 45] (the "Scheduling Motion"), and submits this preliminary response to the *Debtor's Emergency Motion to Enforce the Automatic Stay Against Talc Claimants Who Seek to Pursue Their Claims Against the Debtor and its Non-Debtor Affiliates* [Docket No. 44] (the "Motion to Enforce").[2]

**PRELIMINARY STATEMENT**

1.  At bottom, the Debtor is speaking out of both sides of its mouth.  On one hand, the Debtor wants this Court and the parties to respect the corporate machinations that led to the

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion to Enforce.  AWKO joins the *Motion of the MDL Plaintiffs' Steering Committee to Strike Debtor's Emergency Motion to Enforce the Automatic Stay and Objection to Scheduling an Emergency Hearing [Etc.]* [Docket No. 76] (the "Steering Committee Motion") and the *Objection to Debtor's Emergency Motion to Enforce the Automatic Stay Against Talc Claimants Who Seek to Pursue their Claims Against the Debtor and its Non-Debtor Affiliates* [Docket No. 53] (the "Maune Raichle Objection") to the extent the Steering Committee Motion and Maune Raichle Objection oppose granting the Motion to Enforce on an emergency basis and present preliminary objections to the Motion to Enforce.

1

Debtor's creation as the repository of tainted assets while all the "good" assets are shielded by corporate formalities.  But on the other hand, the Debtor says that for purposes of the automatic stay, actions that name Johnson & Johnson ("J&J") and Johnson & Johnson Consumer Inc. ("JJCI") are in reality actions against the Debtor because the three entities are inherently intertwined.  In other words, for general purposes of the bankruptcy case, the Debtor is presented as a separate and hermetically sealed entity, but for purposes of the Motion to Enforce, there is such an identity of interests between the Debtor, J&J, and JJCI that an action against the latter two is effectively an action against the former.

2. If J&J and JJCI want the benefits and protections of the automatic stay, they can file bankruptcy petitions themselves and subject their assets and their conduct to the full scrutiny of the bankruptcy process.  But they have elected not to take that path, and instead decided to engage in corporate maneuvers that have no purpose other than to hinder, delay, or defraud creditors.  By asking this Court to extend to them the benefits of the automatic stay as if they were debtors, they are asking the Court to legitimize the series of highly suspicious corporate transactions that were allegedly effected just last week.  And by requesting such sweeping relief on an emergency basis at the very outset of the case, they are seeking to stack the deck in their favor before any committee has been appointed and any party in interest has had time to get up to speed.

3. Given the lack of urgency here (underscored by J&J's months'-long will-they-or-won't-they approach to actually proceeding with this "Texas two-step"), there is no need for emergency relief on such abbreviated notice.  The Court should defer ruling until a committee has been appointed, other parties in interest are up to speed, and there can be a fair fight.

**BACKRGOUND**

4. Prior October 12, 2021, AWKO was prosecuting lawsuits against J&J and JJCI in courts around the country on behalf of plaintiffs who were diagnosed with ovarian cancer following regular and prolonged exposure to talcum powder products manufactured, marketed, sold and distributed by J&J and JJCI, both of which were and now are New Jersey corporations. Those lawsuits were proceeding in the ordinary course. The Motion to Enforce seeks to halt their prosecution notwithstanding the fact that neither of these New Jersey corporations has filed for bankruptcy.

5. By the Debtor's telling, something magic occurred on October 12, 2021. On that date, JJCI (which the Debtor refers to as "Old JJCI") merged into a newly-created Texas LLC, which then underwent a "divisional merger" under Texas law. *See Declaration of John K. Kim in Support of First Day Pleadings* [Docket No. 5] (the "First Day Declaration") ¶ 22. This transaction supposedly split the company into two pieces – one that was initially formed as a Texas LLC, immediately converted into a North Carolina LLC, and then placed into bankruptcy; and another that was initially formed as a Texas LLC, then merged into a New Jersey corporation, and finally changed its name back to "Johnson & Johnson Consumer Inc." – i.e., JJCI (which the Debtors refer to as "New JJCI"). *Id*. The end result of this brief foray into Texas, according to the Debtor, is that all of JJCI's talc-related liabilities have been cleaved off.

6. The premise of this bankruptcy case is that the corporate paper-shuffling that occurred last week lawfully and effectively purged two non-debtor New Jersey corporations (J&J and JJCI) of all talc-related liability, and instead siloed that liability in the Debtor, which is supposedly "***solely*** responsible for Old JJCI's liabilities arising from talc-related claims against it." First Day Decl. ¶ 24 (emphasis added).

3

## ARGUMENT

7. The corporate shuffling that occurred on October 12, 2021 was not lawful and effective to purge J&J and JJCI of their liabilities, and this Court should not grant affirmative relief (in the form of the Motion to Enforce) on the premise that it was. Halting long-pending actions against J&J and JJCI – two New Jersey corporations that have never been debtors in bankruptcy – on the basis that they are *ipso facto* a violation of the automatic stay would effectively buy in to the Debtor's theory that the Texas machinations worked, when in fact that will be a hotly disputed point in this case.[3]

8. Importantly, this Court has expressed skepticism regarding the use of the Texas divisional merger statute to cleave off tort liabilities in this way. *See In re DBMP LLC*, No. 20-30080, 2021 WL 3552350, at *26 (Bankr. W.D.N.C. Aug. 11, 2021) ("[I]t appears that the divisive Merger had a material, negative effect on the asbestos creditors' ability to recover on their claims."); *In re Aldrich Pump LLC*, No. 20-30608 (JCW), 2021 WL 3729335, at *30 (Bankr. W.D.N.C. Aug. 23, 2021) (same). As this Court has stated, the use of the Texas two-step process appears designed for a "single purpose:" it is a "vessel designed to ferry" a solvent enterprise's "liabilities into bankruptcy." *DBMP*, at *13.[4]

9. What matters here is that the Debtor has chosen to rest its bankruptcy case on its supposed separateness from J&J and JJCI. Given this overarching strategy, it is disingenuous for the Debtor to now ask the Court to find that the claims against J&J and JJCI are "inherently

---

[3] Relief based on section 105 of the Bankruptcy Code, following the initiation of an adversary proceeding seeking a preliminary injunction, would not present that same issue.

[4] Even Congress has expressed concern about the Texas two-step process. On July 28, 2021, the House Judiciary Committee Subcommittee on Antitrust, Commercial and Administrative Law held a hearing on "Confronting Abuses of the Chapter 11 System." That same day, the Nondebtor Release Prohibition Act of 2021 was introduced – a bill that would expressly prohibit the exact strategy the Debtor is attempting to effectuate in this case. *See* S. 2497, 117th Cong. § 4 (2021), https://www.congress.gov/117/bills/s2497/BILLS-117s2497is.pdf.

intertwined" with those against the Debtor for purposes of the Motion to Enforce. *See* Proposed Order ¶ B; *see also* Mot. ¶ 37 (arguing that "New" JJCI and J&J share an "identity of interest" with the Debtor that warrants extending the automatic stay for their benefit). The Debtor, J&J, and New JJCI cannot have it both ways. If they want the Debtor to be treated as a separate and legitimate corporate entity for purposes of this bankruptcy case, they cannot lump the three entities together based on their "identity of interest" in an attempt to selectively extend the benefits of bankruptcy to the non-debtor entities.

10. And they certainly should not be permitted to secure such sweeping, substantive relief on an emergency basis with less than 48 hours' notice. This bankruptcy case was filed last Thursday. Yesterday, the Debtor filed the Motion to Enforce and the Scheduling Motion, seeking an October 20, 2021 hearing on the Motion to Enforce. The sole justification for such expedited consideration is that "continued litigation of the Debtor Talc Claims would eliminate the protections of the automatic stay." Scheduling Motion ¶ 8. This, of course, is circular insofar as it presumes that the automatic stay applies to the Debtor's non-debtor affiliates – the question at the heart of the Motion to Enforce. Nowhere in the Scheduling Motion does the Debtor articulate how setting the Motion to Enforce for an orderly briefing and hearing schedule will cause any concrete harm or materially prejudice the Debtor or any other party.[5]

11. The factual backdrop here is particularly telling. J&J has been vacillating for months on whether and when it would go through with a Texas two-step scheme. As early as July 18, 2021, it was publicly reported by *Reuters* that J&J was exploring a bankruptcy to offload its talc liabilities. *See* Mike Spector, et al., *J&J Exploring Putting Talc Liabilities Into*

---

[5] The Motion to Enforce is also procedurally improper because the Debtor seeks to "obtain an injunction or other equitable relief" – which can only be accomplished through an adversary proceeding, not a contested matter. Fed. R. Bankr. P. 7001(7).

5

*Bankruptcy*, Reuters, July 18, 2021. On July 28, 2021, the Texas two-step process was discussed at a Congressional hearing. Reports of an imminent filing caused the official committee of tort claimants and the future claimants' representative in the *Imerys* bankruptcy case to seek emergency relief on July 28, 2021 preventing J&J from effectuating the transaction.[6] At a July 29, 2021 hearing in the Imerys case, J&J agreed to maintain the status quo pending full briefing and argument on the committees' preliminary injunction motion. On September 8, 2021, the Bankruptcy Court denied the motion for preliminary injunction and declined to enjoin J&J from effectuating the strategy.[7] Nevertheless, J&J waited over a month to file this case. There is no "emergency" justifying expedited consideration or interim relief.

12. Finally, there is nothing "interim" about the findings the Debtor seeks in the Proposed Order. *See, e.g.*, Proposed Order ¶¶ A (finding and concluding that section 362(a)(1) applies), B (finding and concluding that "Debtor Talc Claims against J&J and New JJCI are inherently intertwined with talc-related claims against the Debtor"). If the Court were to make these findings, they would effectively predetermine the outcome of the Motion to Enforce and prejudice claimants, all on two days' notice and before any committee has even been appointed in the case – i.e., before the other side shows up to contest what the Debtor is seeking.

[The remainder of this page is blank.]

---

[6] *See Motion of the Official Committee of Tort Claimants and the Future Claimants' Representative for Temporary Restraining Order and Preliminary Injunction*, Imerys Talc America, Inc., et al. v. Johnson & Johnson et al., Adv. Proc. No. 21-51006 (Bankr. D. Del.) (Docket No. 4).

[7] *See Order Denying Motion of the Official Committee of Tort Claimants and the Future Claimants' Representative for Preliminary Injunction*, Imerys Talc America, Inc., et al. v. Johnson & Johnson et al., Adv. Proc. No. 21-51006 (Bankr. D. Del.) (Docket No. 54).

**CONCLUSION**

13. There is no basis for providing the relief sought in the Scheduling Motion or the Motion to Enforce. The Court should deny the Scheduling Motion and set the Motion to Enforce for hearing in the ordinary course – *after* a committee has been appointed and with appropriate discovery. No relief is warranted in the interim, but to the extent such relief is ordered, the Court should make clear that all parties' arguments are fully preserved and that the matter can be examined afresh.

Dated: October 19, 2021

**KTBS LAW LLP**[8]

By: /s/ Robert J. Pfister
Michael L. Tuchin (*pro hac vice* forthcoming)
Robert J. Pfister (*pro hac vice* forthcoming)
Samuel M. Kidder (*pro hac vice* forthcoming)
Nir Maoz (*pro hac vice* forthcoming)
KTBS Law LLP
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
Email: mtuchin@ktbslaw.com
rpfister@ktbslaw.com
skidder@ktbslaw.com
nmaoz@ktbslaw.com

*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC*

---

[8] Consistent with Local Rule 2090-2, AWKO is currently finalizing the engagement of North Carolina counsel and expects that such engagement will be in place at the October 20, 2021 hearing on the Scheduling Motion.