UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No.:    21-30589 |
| LTL MANAGEMENT LLC,[1] | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

**MOTION OF BANKRUPTCY ADMINISTRATOR
TO TRANSFER VENUE OF BANKRUPTCY CASE
PURSUANT TO 28 U.S.C. § 1412 AND
FED. R. BANKR. P. 1014(a)(1) IN
THE INTEREST OF JUSTICE OR
<u>FOR THE CONVENIENCE OF PARTIES</u>**

The Bankruptcy Administrator for the Western District of North Carolina (the "<u>Bankruptcy Administrator</u>") hereby moves this Court (the "<u>Motion</u>") for an order transferring venue of the above-captioned bankruptcy case to the District of New Jersey pursuant to 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 1014(a)(1) in the interest of justice or for the convenience of the parties. In support of this Motion, the Bankruptcy Administrator states as follows:

**PRELIMINARY STATEMENT**

1.     The Court should transfer this bankruptcy case to the District of New Jersey in the interest of justice or for the convenience of the parties. While venue may be (barely) proper in this district because the Debtor is a North Carolina entity, nothing requires the Court to give deference to the Debtor's choice of venue when it

---

[1]     The last four digits of the Debtor's taxpayer identification number are 6622.  The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

is entirely manufactured. The interest of justice prong of 28 U.S.C. § 1412 is triggered where, as here, a debtor has created facts to fit the statute.

2.      The convenience of the parties is a further basis for transferring venue to the District of New Jersey, where a majority of the Debtor's litigation was pending prepetition, where judicial economies are most likely to be achieved, where the Debtor's non-debtor affiliates are headquartered, where witnesses are available, and where the Debtor's principal asset is located.

## RELEVANT FACTS

3.      LTL Management LLC (the "Debtor") commenced this bankruptcy case on October 14, 2021, by filing a voluntary petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

4.      The Debtor filed the Declaration of John K. Kim in Support of First Day Pleadings (the "Kim Declaration") on October 14, 2021 [ECF No. 5],[2] which describes the Debtor's most recent corporate restructuring. *See* Kim Declaration, ¶23.[3] The pertinent events took place on October 12, 2021:

---

[2]      Capitalized terms not otherwise defined herein have the meaning ascribed to such terms in the Kim Declaration.

[3]      This Motion relies upon the Kim Declaration but corrects a misstatement: while paragraph 23 states that "Old JJCI effected a divisive merger under Chapter 10, Subchapter A of the Texas Business Organizations Code," Chenango Zero LLC ("Chenango Zero") instead effected the divisive merger following the merger of Johnson & Johnson Consumer, Inc. ("Old JJCI") into Chenango Zero, with Chenango Zero as the surviving entity. *See* Declaration of Shelley K. Abel in Support of Motion of Bankruptcy Administrator to Transfer Venue of Bankruptcy Case Pursuant to 28 U.S.C. § 1412 and Fed. R Bankr. P. 1014(a)(1) in the Interest of Justice or For the Convenience of Parties, Ex. A and B, filed contemporaneously herewith (the "Abel Declaration").

a.  Chenango Zero's divisive merger became effective at 10:00 am CT on October 12, 2021, creating two new entities Chenango One LLC and Chenango Two LLC.

b.  Chenango One LLC was converted from a Texas limited liability company into a North Carolina limited liability company and renamed LTL Management LLC effective 11:00 am CT on October 12, 2021.

c.  The Articles of Organization Including Articles of Conversion were filed with the North Carolina Secretary of State at 1:00pm ET on October 12, 2021. *See id.*, Ex. A-D.

5.  In its voluntary petition filed on October 14, 2021 [ECF No.1] (the "Petition"), the Debtor lists its principal place of business as 501 George St., New Brunswick, NJ 08933. [ECF No. 1] The Petition further states that the "location of principal assets, if different from principal place of business," is North Carolina. [*Id.*]

6.  According to question 11 of the Petition, i.e., "Why is the case filed in *this* district?," the Debtor indicates that "Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district." [*Id.*]

7.  According to the Articles of Organization Including Articles of Conversion filed with the North Carolina Secretary of State (the "Articles"), the Debtor reflects a mailing address of 501 George St., New Brunswick, NJ 08933 in

Middlesex County, New Jersey. The Articles further reflect that the Debtor does not have a principal office. *See* Abel Declaration, Exhibit D.

8.     While the Debtor has not filed schedules of assets and liabilities or a statement of financial affairs, the Debtor owns, upon information and belief: (i) a bank account containing approximately $6 million at Bank of America; (ii) obligations owed to it under the Funding Agreement, as such term is defined in the Kim Declaration, and (iii) the membership interests in Royalty A&M LLC, a North Carolina limited liability company formed shortly before to the Debtor's formation. *See* Kim Declaration, ¶¶17, 24.

9.     In addition, the Debtor "has access to" various insurance receivables potentially covering talc-related liabilities, presumably as an additional insured along with Debtor's ultimate parent, Johnson & Johnson ("J&J") and other non-debtor affiliates. *See* Kim Declaration, ¶¶46, 52.

10.     As a result of the divisive merger, the Debtor's only liabilities are talc-related claims previously asserted against Old JJCI. *See* Kim Declaration, ¶21. In lieu of a "top 20" list of creditors, the Debtor filed a List of 30 Law Firms With the Most Significant Representations of Talc Claimants. [ECF Nos. 1, 7] The Debtor explains that "[a]s of the Petition Date, there were approximately 38,000 ovarian cancer cases pending against the Debtor, including approximately 35,000 cases pending in a federal multi-district litigation in New Jersey, and approximately 3,300 cases in multiple state court jurisdictions across the country." *See* Kim Declaration, ¶42.

11.     The New Jersey Coverage Action is pending in the New Jersey Superior Court of Middlesex County where certain insurers seek a declaratory judgment regarding the parties' respective obligations under the various insurance policies. *See* Kim Declaration, ¶54.

12.     Imerys Talc America, Inc., and its affiliates (collectively, "Imerys") and Cyprus Mines Corporation ("Cyprus") assert claims against Old JJCI and J&J for indemnification, indemnity, and/or joint insurance proceeds. Both Imerys and Cyprus are in separate, but factually connected, bankruptcy cases currently pending in the District of Delaware, where each have filed adversary proceedings against Old JJCI and J&J, seeking declaratory judgments relating to indemnity. *See* Kim Declaration, ¶¶55-57.

## ARGUMENT

13.     The United States Code provides two alternative bases for venue of a bankruptcy case: (i) a debtor may commence its case in any judicial district where the Debtor's "domicile, residence, principal place of business . . . or principal assets" have been located for a "longer portion of" the 180 days prior to the Petition Date; or (ii) it may file its case in any district where the bankruptcy case of an affiliate is pending. 28 U.S.C. § 1408(2).

14.     To support venue, the Debtor will argue that venue is proper because the Debtor was organized in North Carolina "for the longer portion of" its mere 2 days of existence, ignoring that – for decades and through and including October 12, 2021 – the Debtor's predecessor was a New Jersey corporation with a New Jersey

headquarters. Absent a full attack on the use of a Texas divisive merger prior to filing a bankruptcy petition – an issue better heard by the court where the case will proceed to confirmation or be dismissed – venue is technically proper in North Carolina, albeit barely.

15.     Pursuant to 28 U.S.C. § 1412, the Court may transfer a case under title 11 to another district "in the interest of justice **or** for the convenience of the parties." 28 U.S.C. § 1412 (emphasis added). Section 1412 is written in the disjunctive, such that each of the two prongs – "in the interest of justice" or "for the convenience of the parties" – constitutes an independent ground for transferring venue. *In re Grand Dakota Partners, LLC*, 573 B.R. 197, 201-02 (Bankr. W.D.N.C. 2017) (citing *In re Patriot Coal Corp.*, 482 B.R. 718, 738-39 (Bankr. S.D.N.Y. 2012)); *In re Harnischfeger Indus., Inc.*, 246 B.R. 421, 435 (Bankr. N.D. Ala. 2000) ("Because the criteria under § 1412 is phrased in the disjunctive, the bankruptcy case or proceeding is transferable upon a sufficient showing of either the interest of justice or the convenience of the parties.").

16.     The decision of whether to transfer venue is within the sound discretion of the Court based on a case-by-case analysis of the facts underlying each particular case. *In re Grand Dakota Partners*, 573 B.R. at 201; *In re Patriot Coal Corp.*, 482 B.R. at 739 (citing *Gulf States Exploration Co. v. Manville Forest Prods. Corp. (In re Manville Forest Prods. Corp.*), 896 F.2d 1384, 1391 (2d Cir. 1990)) (citations omitted); *In re 19101 Corp.*, 74 B.R. 34, 35 (Bankr. D. R.I. 1987).

i.     **In the Interest of Justice, Venue of These Cases Should Be
Transferred to the District of New Jersey Pursuant to 28 U.S.C.
§ 1412.**

17.     The "interest of justice" prong of section 1412 "is a broad and flexible

standard that is applied based on the facts and circumstances of each case." *In re

Enron Corp.*, 274 B.R. 327, 342 (Bankr. S.D.N.Y. 2002). Courts have recognized that

unreasonable forum shopping is an important factor in determining whether the

debtor's choice of venue should be given deference or, instead, whether the case

should be transferred in the interest of justice.

18.     The facts in this case are similar to *In re Patriot Coal Corp.*, 482 B.R.

718 (Bankr. S.D.N.Y. 2012). In the *Patriot Coal* case, two new subsidiaries were

incorporated under New York law in the weeks prior to the petition date, providing

the venue vehicle by which 97 affiliates from across the country filed petitions in the

Southern District of New York. *Id.* at 726-28. The parties in that case stipulated, and

the court agreed, that the debtors had "achieved literal and technical compliance with

the venue statute." *Id.* at 741. The *Patriot Coal* debtors believed that the inquiry

should end there, but the court disagreed, stating that "the [d]ebtors' purposeful

creation of the venue-predicate affiliates in New York on the eve of filing must be

considered in the 'interest of justice' analysis set forth in section 1412." *Id.* at 743.

Comparing the manufacturing of venue to artificial impairment in cramdown, the

court concluded that it "cannot allow the [d]ebtors' venue choice to stand, as to do so

would elevate form over substance in a way that would be an affront to the purpose

of the bankruptcy venue statute and the integrity of the bankruptcy system." *Id.* at 744.

19.    The Southern District of New York reached the same conclusion in similar cases when the vehicle for venue was created on the eve of the petition. *See, e.g.*, *In re Dunmore Homes, Inc.*, 380 B.R. 663, 671 (Bankr. S.D.N.Y 2008) (granting a motion to transfer venue in the interest of justice and finding relevant that the debtors' sole New York-based affiliate had been created just 59 days prior to the petition date); *In re Winn-Dixies Stores, Inc.*, No. 05-11063 (Bankr. S.D.N.Y. Apr. 12, 2005) (as described in detail in *Patriot Coal Corp.*, 482 B.R. at 745, ordering transfer of venue in the interest of justice where the debtor established venue based on its incorporation of a subsidiary in New York 12 days before its chapter 11 filing).

20.    The instant case involves an even more aggressive maneuver by the Debtor than those described above. Here, instead of creating a subsidiary to serve as a lead filer for operating affiliates' venue choice under section 1408(2), Old JJCI's successor by merger underwent a Texas divisive merger (along with intervening steps not relevant here) resulting in two new entities: (1) the Debtor entity, which received Old JJCI's talc-related liabilities, immediately converted its state of organization to North Carolina, and filed bankruptcy two days later, and (2) "new" Johnson & Johnson Consumer Inc. ("New JJCI"), which received the operating assets and liabilities and resumed operations using Old JJCI's name. While the divisive merger was undertaken for reasons other than venue creation, the Debtor's conversion into

a North Carolina limited liability company was entirely motivated by its forum selection.

21.     As a result, the Debtor's connections to North Carolina are limited, manufactured, and recent. The Debtor did not exist until a mere two days prior to the Petition Date, and Old JJCI had no relationship with North Carolina. The Debtor owns the membership interests in Royalty A&M, a North Carolina limited liability company, but that entity's connections to North Carolina is equally limited, manufactured, and recent since it was formed only a day prior to the Debtor. See Kim Declaration, ¶22. In addition, the Debtor's bare assertion in its voluntary petition that its principal assets are located in North Carolina is not supported by the facts.[4]

22.     The court in *Patriot Coal* decision said it best:

> Here, as in *Winn-Dixie*, the [debtors] created facts in order to satisfy the statute, as opposed to taking advantage of the facts as they existed. Permitting the [debtors'] cases to remain in this District under these circumstances would all but render the venue statute meaningless. It would allow potential large corporate debtors to choose what they view as the optimal venue for their bankruptcy cases and, in preparation for filing chapter 11, incorporate an [entity] in that location for purposes of satisfying section 1408. . . . Section 1408 should not be interpreted in a way that gives debtors a free pass to conduct their cases here, or in any other district they choose.

*In re Patriot Coal Corp.*, 482 B.R. at 746.

23.     For the foregoing reasons, the interest of justice and fundamental notions of fairness require the transferring of venue of this case to another district pursuant to 28 U.S.C. § 1412.

---

[4]     *See* discussion at ¶36(b), *infra*.

ii.     **For the Convenience of the Parties, Venue of These Cases Should Be Transferred to the District of New Jersey Pursuant to 28 U.S.C. § 1412.**

24.     In considering whether a transfer of venue of a bankruptcy case "for the convenience of the parties" is appropriate under 28 U.S.C. § 1412, this Court has previously looked to the six criteria established by the Fifth Circuit in *In re Commonwealth Oil Ref. Co.*, 596 F.2d 1239, 1242 (5th Cir. 1979) (better known as and hereinafter referred to as "*CORCO*"):

> (1) the proximity of creditors of every kind to the court;
> (2) the proximity of the Debtor to the court;
> (3) the proximity of the witnesses necessary to the administration of the estate;
> (4) the location of the assets;
> (5) the economic administration of the estate; and
> (6) the necessity for ancillary administration if a liquidation should occur.

*In re Grand Dakota Partners*, 573 B.R. at 201-02 (applying the six *CORCO* factors); *see also Lakota Canyon Ranch*, 2011 Bankr. LEXIS 4652, at *7, 2011 WL 5909630, at *2-3 (Bankr. E.D.N.C. June 21, 2011); *Spartan Holding Co., Inc.*, 2011 Bankr. LEXIS 1992, at *5, 2011 WL 5909502, at *2 (Bankr. E.D.N.C. May 24, 2011).

25.     "While there is generally a presumption in favor of maintaining a debtor's choice of venue, the weight afforded to a debtor's choice is diminished when the 'choice of forum is not directly related to the operative, underlying facts of the case.'" *In re Grand Dakota Partners,* 573 B.R. at 203 (quoting *In re Rehobeth*, 2011 Bankr. LEXIS 3922, at *10, 2011 WL 5024267, at *2 (Bankr. Del. 2011)).

26.     Proximity of creditors of every kind to the Court and economic administration of the estate. Bankruptcy courts have found that the existence of related litigation in another district supports the transfer of a case to that district.

*See, e.g.*, *In re Asset Resolution LLC*, 2009 Bankr. LEXIS 3711, at *9, 2009 WL
4505944, at *3 (Bankr. S.D.N.Y Nov. 24, 2009); *In re Eclair Bakery Ltd.*, 255 B.R.
121, 142 (Bankr. S.D.N.Y 2000).

27.    An overwhelming majority of the litigation cases against the Debtor –
approximately 35,000 of 38,000, or 92% of all cases – are pending in federal multi-
district litigation in New Jersey. Kim Declaration, ¶42. These cases were consolidated
pursuant to 28 U.S.C. § 1407 by order entered by the United States Judicial Panel on
Multidistrict Litigation on October 4, 2016 (the "Transfer Order"), in the case
captioned *In re: Johnson & Johnson Talcum Power Products Marketing, Sales
Practices and Products Liability Litigation*, Case MDL No. 2738, in the District of
New Jersey, Case No. 16-02738 (the "New Jersey MDL"). *See* Abel Declaration,
Exhibit E. The District of New Jersey was chosen at the request of the defendants
including J&J and Old JJCI. *Id.*

28.    The Transfer Order found in pertinent part "that centralization in the
District of New Jersey will serve the convenience of the parties and witnesses and
promote the just and efficient conduct of this litigation." *Id.* The Transfer Order
continues:

> We select the District of New Jersey as the appropriate transferee district for
> this litigation. The district is a convenient and accessible forum for this
> nationwide litigation, and is located in close proximity to a large number of
> state court actions pending in New Jersey and other jurisdictions on the East
> Coast of the United States. As Johnson & Johnson is headquartered in New
> Jersey, relevant evidence and witnesses likely are located in the District of
> New Jersey. The Honorable Freda L. Wolfson is an experienced MDL judge
> with the willingness and ability to manage this litigation efficiently. Further,
> as Judge Wolfson is presiding over the most procedurally-advanced action
> (Chakalos), she is well situated to structure this litigation so as to minimize
> delay and avoid unnecessary duplication of discovery and motion practice.

*Id.*

29.    While it is admitted that the plaintiffs in the New Jersey MDL are not necessarily located in New Jersey, the MDL plaintiffs have devoted significant resources to litigating in this forum for five years. It would be much easier for the 3,300 other litigants to now participate in a bankruptcy in New Jersey than to ask 35,000 litigants accustomed to appearing in the New Jersey MDL to participate in a bankruptcy in the Western District of North Carolina.

30.    In addition to resources devoted by the claimants, judicial resources have been committed to the New Jersey MDL. While bankruptcy cases are referred to the bankruptcy court in the district under a standing order of reference, Judge Wolfson may choose (if given the chance by a transfer of venue to New Jersey) to withdraw the reference of this bankruptcy case given her familiarity with the plaintiffs' litigation against the Debtor's predecessor, Old JJCI, and ultimate parent, J&J. While the bankruptcy case involves additional personal injury claimants not previously participating in the New Jersey MDL, there is no myriad of competing interests from employees, trade creditors, and secured lenders that would prevent Judge Wolfson from finding that cause exists for withdrawal of the reference under 28 U.S.C. § 157(d). *See, e.g., Samiri v. Christenbury Eye Center, P.A., et al.*, No. 17-cv-474-FDW (W.D.N.C. Mar. 14, 2018) (finding cause exists for withdrawal of the reference so that discovery could proceed in litigation following defendant's bankruptcy filing), attached to the Abel Declaration as Exhibit F. Indeed, the "reduction of forum shopping" is one factor considered by many courts in determining

whether cause exists for withdrawal of the reference. *See, e.g.*, *In re US Airways Grp., Inc.*, 296 B.R. 673, 681 (E.D. Va. 2003); *Joe Gibson's Auto World, Inc. v. Zurich Am. Ins. Co. (In re Joe Gibson's Auto World, Inc.)*, 2012 U.S. Dist. LEXIS 46114, at *1, 2012 WL 1107763, at *3 (D. S.C. Apr. 2, 2012); *Vieira v. AGM, II, LLC*, 366 B.R. 532, 540 (D. S.C. 2007).

31.    While the Debtor signals a desire to negotiate with claimants, a failure of that negotiation inevitably will lead to a motion to estimate claims. There is no judge more uniquely qualified to hear an estimation trial of the Debtor's liabilities than Judge Wolfson of the District of New Jersey.

32.    Lastly, because New Jersey borders Delaware, where the bankruptcy cases of Imerys and Cyprus are pending, the proximity of those jurisdictions to one another will allow for easier access of all debtors' professionals to each of the cases.

33.    These factors – proximity of creditors to the court and economic administration – weigh heavily in favor of transfer of this case to the District of New Jersey.

34.    <u>Proximity of the Debtor to the Court</u>. Transferring this case to New Jersey is also supported by the Debtor's continuing connections to New Jersey. The Petition states that the Debtor's principal place of business is New Jersey. [ECF No. 1] Both the Petition and the Articles reflect a New Jersey address for the Debtor. *See* Petition [*Id.*] and Abel Declaration at Exhibit D. The Debtor is a newly North Carolina entity, formed only days prior to the Petition Date.[5] Upon information and

---

[5]    *See* discussion at ¶¶20-21, *supra*.

belief, none of the Debtor's corporate officers or directors are in North Carolina; meanwhile, its Chief Legal Officer, Mr. Kim, works in New Jersey. While this Debtor is a North Carolina limited liability company, there is nothing to suggest that it has any physical proximity to this state other than a third-party registered agent in Raleigh. This factor weighs in favor of transfer of this case to the District of New Jersey.

35.    <u>Proximity of witnesses necessary to the administration of the estate</u>. Regarding this factor, courts have considered where the likely witnesses, particularly those responsible for day-to-day operations of the debtor, were located. *See, e.g.*, *In re Pinehaven Assocs.*, 132 B.R. 982, 988-89 (Bankr. E.D.N.Y. 1991); *In re Rehoboth Hospitality*, 2011 Bankr. LEXIS 3992, at *12, 2011 WL 5024267, at *3. While this Debtor has no operations beyond litigation management, certain employees of Johnson & Johnson Services, Inc., a New Jersey corporation, have been seconded to the Debtor. *See* Kim Declaration, ¶29. In addition, the Debtor's primary witness and first-day declarant, Mr. John K. Kim, works in New Jersey. Upon information and belief, no witnesses are located in North Carolina. This *CORCO* factor weighs in favor of transfer to the District of New Jersey.

36.    <u>Location of the assets</u>. "Many courts have focused on one factor which they consider to overwhelmingly compel transfer and that is where the principal asset of the debtor is located." *In re A & D Care, Inc.*, 86 B.R. 43, 45 (Bankr. M.D. Pa. 1988). Here, the Debtor owns only cash held in a bank account and intangible assets, including membership interests in a North Carolina limited liability company, the

Debtor's rights under the Funding Agreement, and contested insurance receivables (shared with non-debtor affiliates). Taking each asset in turn:

a.  The Kim Declaration states that "the Debtor maintains a bank account at Bank of America in Charlotte, North Carolina." *See* Kim Declaration, ¶76. Bank of America is a national bank with branches in both Charlotte and New Brunswick, New Jersey; funds in the deposit account can be accessed nationwide. Regardless of its location, the deposit account is the smallest of the Debtor's assets and therefore should receive little weight.

b.  The Debtor estimates the fair market value of its ownership interest in Royalty A&M to be approximately $367.1 million as of the Petition Date. *See* Kim Declaration, ¶26. These membership interests are intangible and lack a physical "location" when applying this *CORCO* factor. Even assuming, for the sake of argument, that membership interests in a North Carolina limited liability company are located in North Carolina,[6] this legal conclusion should not be afforded great weight because Royalty A&M is a newly created limited liability company, formed on the eve of the Debtor's own organization just

---

[6]    While not controlling on this Court, the only case law discussing the location of limited liability company membership interests for purposes of bankruptcy venue is *Montana v. Blixseth (In re Blixseth)*, 484 B.R. 360 (9th Cir. 2012). In *Blixseth*, the Ninth Circuit found the location of an individual debtor's "principal assets," a Nevada LLC and LLLP, were located in Nevada even though he resided in Washington. *Id.* at 371. The *Blixseth* opinion, however, is limited by the court's statement: "we acknowledge that the bankruptcy court's decision that intangible assets may have no situs or that, if they do possess a 'location,' it should be the same as the debtor's residence, may be defensible when founded on different facts. *Id.*

prior to the Petition Date.[7] Lastly, Royalty A&M's business is owning a portfolio of royalty revenue streams based on third-party sales of certain product lines. *See* Kim Declaration, ¶18. These operations and assets lack any relationship to North Carolina.

c. The Debtor's largest asset is its rights under the Funding Agreement. The Debtor's Motion for an Order Authorizing Establishment of a Qualified Settlement Fund for Payment of Talc Claims (the "QSF Motion") [ECF No. 8] states that J&J and New JJCI have agreed to advance an aggregate amount of $2 billion under the Funding Agreement into a trust for the benefit of talc claimants. See QSF Motion, ¶7. The Debtor also represented to the Court at the first day hearings in this case that this amount was not a cap but rather a starting point for negotiations. As such, the Debtor's rights under the Funding Agreement are its most valuable asset. The location of this asset is the situs of the party whose obligation it is to perform under the contract, which is New Jersey for both New JJCI and J&J. *In re Mainline Contracting, Inc.*, 2009 Bankr. LEXIS 3644, at *5, 2009 WL 3785568, at *2 (Bankr. E.D.N.C. 2009) (quoting *In re Bd. of Dirs. of Hopewell Int'l Ins. Ltd.*, 238 B.R. 25, 48 (Bankr. S.D.N.Y. 1999) ("The location of intangible personal property

---

[7]     Articles of Organization for Royalty A&M were filed on October 7, 2021, with the North Carolina Secretary of State. See Abel Declaration, Exhibit G. The Kim Declaration states that Old JJCI organized Royalty A&M LLC on October 11, 2021. *See* Kim Declaration, ¶22.

interests such as accounts receivable is the situs of the account debtor or the party whose obligation it is to perform under the contract.")).

d.  The Kim Declaration states that "the limits of solvent primary and excess insurance policies issued to J&J by third-party insurers that potentially cover talc-related liabilities are in excess of $1.95 billion." *See* Kim Declaration, ¶52. This value may not be entirely available to the Debtor, both because coverage under certain insurance policies is contested and because proceeds could be paid for the benefit of non-debtor affiliates. In addition, the insurance receivables are due from insurance companies found throughout the country. *See* Second Amended Complaint, attached to Abel Declaration at Exhibit H. As such, the location of this asset requires an analysis of individual insurance contracts, an undertaking not necessary on these facts.

The Debtor's most valuable asset is located in New Jersey and, likewise, the location of a majority of its assets; as such, it must be concluded that the Debtor's principal asset is located in New Jersey. This factor weighs in favor of transfer to the District of New Jersey.

37.  Each of the *CORCO* factors weigh in favor of transferring the venue of this case to New Jersey. As such, the convenience of the parties under 28 U.S.C. § 1412 forms an independent basis for the Court to grant the Motion.

### iii. The venue analysis in this case is different than *Kaiser* and *Bestwall*.

38.     Similar motions to transfer venue have been denied in *Kaiser* and *Bestwall*, both of which underwent their own acrobatics to establish venue in North Carolina. *See In re Kaiser Gypsum Co., Inc.*, No. 16-31602 (Bankr. W.D.N.C. Jan. 30, 2017) (*See* Abel Declaration, Exhibit I) and *In re Bestwall LLC*, 605 B.R. 43, 52 (Bankr. W.D.N.C. 2019). The Court's rulings in these prior cases are distinguishable from the Motion presented here.

39.     First, this Motion is filed in the early days of the case, and a hearing is set for November 10, 2021, a short period after the Petition Date. As a result, there is no risk of judicial inefficiencies in transferring this case, as any court, including this one, will continue to confront a substantial "learning curve" to understand the facts and legal issues of this case. By the time the Court rendered decisions on venue in *Bestwall*, and to a lesser extent in *Kaiser*, the Court had invested much more time and judicial resources – a factor not present here, notwithstanding the Court's hard work to date.

40.     Second, the Debtor's timeline – filing a voluntary petition just 2 days after it became a North Carolina limited liability company – coupled with the fact that the Debtor's only connections to North Carolina are those created on October 12, 2021, pushes the limits of the bankruptcy venue statute and notions of fair play. No deference is required to the Debtor's manufactured venue, and the interest of justice prong of 28 U.S.C. § 1412 establishes an independent basis for this Court to transfer venue.

41.     Third, and most compelling, the Debtor has significant connections to another jurisdiction, New Jersey – (a) 35,000 ovarian cancer claims are pending in the New Jersey MDL in the U.S. District Court for the District of New Jersey, representing 92% of the litigation cases pending against the Debtor; (b) insurance coverage litigation is pending in the New Jersey Superior Court of Middlesex County, (c) the Debtor's principal place of business is in New Jersey; (d) the Debtor's immediate parent, New JJCI, ultimate parent, J&J, and predecessor, Old JJCI, are or were each headquartered in New Jersey and organized under New Jersey law; (e) the likely witnesses are located in New Jersey; and (f) the Debtor's largest asset and a majority of its assets, its rights under the Funding Agreement, is located in New Jersey. No such concentration of connections existed in *Kaiser* or *Bestwall*, leading this Court to conclude that those debtors' choice of venue was no worse than any other. The instant facts do not support the same conclusion.

## RESERVATION OF RIGHTS

42.     The manufacturing of venue for this bankruptcy case is only a minor portion of the legal maneuvering undertaken by the Debtor in its effort to change the narrative surrounding talc-related claims against Old JJCI. Nothing in this Motion is intended to limit the inquiry into the propriety of that maneuvering; rather, it should be viewed as simply the first step in the analysis. For the avoidance of doubt, the Motion is filed with an express reservation of rights for the benefit of the Bankruptcy Administrator and all other parties in interest regarding additional

challenges to the prepetition reorganization of the Debtor and its non-debtor affiliates.

WHEREFORE, the undersigned moves to transfer the venue of this case to the District of New Jersey and for such other and further relief as this Court deems just and proper.

Dated: October 25, 2021.

/s/ Shelley K. Abel
Shelley K. Abel
U.S. Bankruptcy Administrator
402 W. Trade Street, Suite 200
Charlotte, NC 28202-1669
N.C. Bar No. 34370
Telephone: (704) 350-7587
Email: shelley_abel@ncwba.uscourts.gov

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the forgoing was served upon those parties registered to receive ECF notifications in the case on October 25, 2021.


/s/ Shelley K. Abel
Shelley K. Abel
U.S. Bankruptcy Administrator
402 W. Trade Street, Suite 200
Charlotte, NC 28202-1669
N.C. Bar No. 34370
Telephone: (704) 350-7587
Email: shelley_abel@ncwba.uscourts.gov