**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

|  |  |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>Debtor. | Chapter 11<br><br>Case No. 21-30589 (JCW) |

**RESPONSE TO ORDER TO SHOW CAUSE[2] AND MOTION OF ARNOLD & ITKIN LLP ON BEHALF OF CERTAIN TALC PERSONAL INJURY CLAIMANTS TO TRANSFER VENUE OF THIS CHAPTER 11 CASE TO THE DISTRICT OF DELAWARE OR, IF NOT TO THAT DISTRICT, THE DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. § 1412 AND RULE 1014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

The law firm of Arnold & Itkin LLP ("Arnold & Itkin"), on behalf of over 7,000 talc personal injury claimants (including 848 who are plaintiffs in lawsuits that are part of the multidistrict litigation in the District of New Jersey) represented by Arnold & Itkin (the "Movants"), through their undersigned counsel, pursuant to section 1412 of title 28 of the United States Code (the "Judicial Code") and Rule 1014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), hereby responds to the Venue OSC and moves this Court (the "Motion") to transfer the above-referenced chapter 11 case ("Chapter 11 Case"), in the interests of justice and/or for the convenience of the parties, to the District of Delaware or, alternatively, the District of New Jersey.  In support of this Motion, the Movants respectfully represent as follows:[3]

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2] On October 26, 2021, this Court entered an *Order to Appear and Show Cause Why Venue Should not be Transferred to Another District* [Docket No. 208] ("Venue OSC").

[3] In support of this Motion, Movants append hereto the Declaration of Laura Davis Jones (the "Jones Dec.")

## PRELIMINARY STATEMENT

1.     There can be no serious question that the interests of justice and the convenience of the parties will be best served by transferring venue of this Chapter 11 Case to another District—the only question is whether that District should be the District of Delaware or the neighboring District of New Jersey.

2.     To begin with, although the commencement of this case in this District may be proper under 28 U.S.C. § 1408 as a purely technical matter, the Debtor's operative ties to this District are minimal in duration, as well as in scope—as this Court observed, "there are minimal contacts here."  Jones Dec. Exh. A (First Day Transcript) at 217:22-23.[4]  As noted by the Court, the "[D]ebtor has no prior commitment to North Carolina other than its creation and now for the last seven days having a subsidiary that's a North Carolina corporation as well as the [D]ebtor and a bank account, of course." *Id.* at 217:17-21.

3.     Meanwhile, as the Court also noted at the hearing on the Debtor's first day motions (the "First Day Hearing"), its resources are already stretched—including as a result of other "Texas two-step" cases filed by counsel for this Debtor:

> As I have cautioned the parties in the prior cases, this is a small, underserved court. There are only  two bankruptcy judges. One of the two bankruptcy judges is conflicted out of most of the, whatever it is, five or seven cases that we have pending right now. That means you're stuck with me and there is a limit to what I can do. And so there is a, a judicial concern here of whether I can get you enough  time to manage this case…
>
> But the bottom line is that there are minimal contacts here and there is a, a broader question to be raised as well, which is these divisional mergers and the practice of  allowing large corporate concerns to access bankruptcy relief -- and I understand the argument in favor of that from the prior cases -- to access section

---

[4]     A copy of the relevant portions of the Transcript of Hearing dated October 20, 2021 (the "First Day Transcript") is attached to the Jones Dec. as **Exhibit A**.

2

> 524(g) without bringing the entire corporate enterprise in.  I, I
> understand the reasons why that might not be palatable to a big
> company.  But there is a question there that has never been
> addressed by the courts prior and I can think of no reason offhand
> why the Western District of North Carolina needs to be the arbiter
> of that for all Circuits and courts.

*Id.* at 217:6-13; 217:22-218:8.

4.      Concentrating the new and proliferating cottage industry of "Texas two-step"

mass tort chapter 11 cases in one overburdened court with only two bankruptcy judges both

strains the resources of this Court, and plays into the use (or misuse) of the threat of years of

delay by the Debtor's parent, Johnson & Johnson ("J&J") —the mastermind of this case—to

obtain concessions in the new round of negotiations contemplated by the Debtor which J&J was

unable to extract in the apparently extensive negotiations with claimant representatives that took

place before this Debtor was even born.  *See* Jones Dec. Exh. A at 41:16-20 ("meaningful

negotiations can occur virtually immediately and that's because negotiations with claimant

representatives in the Imerys case were relatively far along and as a result, the parties have a

head start on the work that needs to be done to reach an agreement").

5.      The Debtor's primary venue "hook" to this District is the Debtor's conversion to a

North Carolina limited liability company *two (2) days* before it filed this chapter 11 case.  Kim

Declaration at ¶ 16.  The Debtor identifies its address as being in New Brunswick, New Jersey,

only two-tenths of a mile from the headquarters of J&J and J&J Services (and, according to

Google Maps, part of the same complex of buildings).[5]  The Debtor's employees are seconded

from J&J Services; and its chief legal officer and declarant in support of the Debtor's first day

---

[5]    Attached as **Exhibit B** to the Jones Dec. is a printout of the Google Maps showing 501 George Street and J&J
World Headquarters in New Brunswick, New Jersey, the distance between the Debtor's address and this Court,
and the distance between the Bankruptcy Court in Trenton New Jersey and the Bankruptcy Court in
Wilmington, Delaware.

motions and its motion for a temporary restraining order is located at J&J's headquarters.   The

Debtor's "List of 30 Law Firms with the Most Significant Representations of Talc Claimants"

does not identify a single law firm with an address in North Carolina.  The Debtor admits that of

the 38,000 talc-related claims pending against it, over 35,000 of them are pending in New Jersey,

and has not identified a single lawsuit against it that is pending in this District.  Additionally, the

Debtor's primary asset is its interests in the Funding Agreement with J&J and New JJCI – both

located in New Jersey.  With respect to the Debtor's potentially next most significant asset, its

rights in certain insurance policies, a coverage action is already pending relating to coverage

under those policies in New Jersey.

6.      Although the foregoing factors weigh in favor of transferring venue of this case to

the District of New Jersey, this case involves a unique set of circumstances that makes the

neighboring District of Delaware—whose Bankruptcy Court is located less than 100 miles from

New Brunswick[6] -- the appropriate transferee Court for this case.  The Delaware Bankruptcy

Court is already quite far along in handling two sets of talc-related "mass tort" chapter 11 cases

that are pending before a single bankruptcy judge and are closely related to the Debtor's case—

namely, the chapter 11 cases of (i) Imerys Talc America, Inc. and affiliated debtors, who were

the exclusive suppliers of talc to J&J and affiliates for many years (collectively "Imerys" or

"Imerys Debtors" and the "Imerys Bankruptcy Case"),[7] which have  been pending for over two

and one-half years, and (ii) Cyprus Mines Corporation ("Cyprus Mines"),[8] which purchased

---

[6]   Movants understand that if this case is transferred to New Jersey, it likely would be assigned to a bankruptcy
judge in Trenton, New Jersey, which is about 60 miles away from the Bankruptcy Court in Delaware.  Jones
Dec. Exh. B (Google Maps).

[7]   On February 13, 2019, the Imerys Debtors (including Imerys Talc America, Inc., Imerys Talc Vermont, Inc.,
("Imerys Talc Vermont") and Imerys Talc Canada, Inc.) filed for chapter 11 relief in Delaware.  The Imerys
Debtors' cases are jointly administered under *In re Imerys Talc America, Inc.*, Case No. 19-10289 (LSS).

[8]   On February 11, 2021, Cyprus Mines Corporation filed for chapter 11 in Delaware and the case is administered
under *In re Cyprus Mines Corporation*, Case No. 21-10398 (LSS) (the "Cyprus Mines Bankruptcy Case").

4

certain talc mining operations from J&J in 1989 and sold those interests to Imerys in 1992 (those interests now being owned by Debtor Imerys Talc Vermont); the Cyprus Mines Bankruptcy Case is pending in Delaware before the same Bankruptcy Judge overseeing the Imerys Bankruptcy Case.

7.       As acknowledged by the Debtor, both sets of Delaware chapter 11 cases are related to the Debtor's case, not only because of overlapping claimants (with approximately 18,000 of the 38,000 pending suits against the Debtor also naming Imerys as a defendant (Jones Dec. Exh. A (First Day Transcript) at 39:14-17), but also because (i) Imerys and Cyprus Mines are likely the two largest creditors in this case based on the indemnification obligations owed by Debtor and J&J, and (ii) the Debtor contemplates seeking mandatory mediation, not only from this Court with respect to this case, but also from the Bankruptcy Court in Delaware with respect to parties to the Imerys and Cyprus Mines Bankruptcy Cases (*Id.* at 41:21-42:4), thereby setting the stage for potential coordination issues and conflict between bankruptcy courts in different districts as to matters such as whether to order mediation; the scope of any mediation; and the ground rules for any mediation.  On top of all that, sixteen law firms identified on the "Top 30 Law Firm" list in this case (*see Voluntary Petition: Chapter 11 Case: List of 30 Law Firms with the Most Significant Representations of Talc Claimants* [Docket No. 1]) (the "LTL Top 30 Law Firm List") are also identified on the Imerys Top 30 Law Firm List,[9]  with clients of seven of the law firms on the "Top 30 Law Firm" list in this case already serving on the Official Committee

---

[9]       Attached as **Exhibit C** to the Jones Dec. is a copy of the *Imerys Talc Debtors' Consolidated List of the Top Thirty Law Firms with the Most Significant Representations of Talc Claimants* (the "Imerys Top 30 Law Firm List") that was filed in as part of the petitions in the Imerys Bankruptcy Case.  Attached as **Exhibit D** to the Jones Dec. is a chart (the "Significant Law Firm Chart") identifying the extent of the overlap between the law firms listed on the Imerys Top 30 Law Firm List and those listed on the LTL Top 30 Law Firm List, and indicating which of the law firms listed on the LTL Top 30 Law Firm List represent members of the Official Committee of Tort Claimants in the Imerys Bankruptcy Case, or filed notices of appearance on behalf of clients or took other action in connection with the Imerys Bankruptcy Case.

of Tort Claimants in the Imerys Bankruptcy Case for over two years.  *See* Jones Dec. Exh. D

(Significant Law Firm Chart).

8.      Indeed, at the First Day Hearing, Debtor's counsel acknowledged that one of the

goals of this Chapter 11 Case was to resolve the talc-related liability claims of Imerys and

Cyprus Mines against the Debtor and J&J.  Jones Dec. Exh. A (First Day Transcript) at 41:25-

42:8.  Notably, Debtor's counsel also told the Court that there was reason to believe that

"meaningful negotiations can occur virtually immediately" in this case, precisely because of all

of the negotiations with claimant representatives that had taken place in connection with the

Imerys Bankruptcy Case.  *Id.*[10]   Debtor's counsel further stated: "due to the current status of the

Imerys and Cyprus cases and the filing of this one we believe we have a unique opportunity to

get the parties to the table to see if an overall resolution can be achieved in all three cases."  *Id.* at

42:4-8. Regardless of whether the Debtor's optimism is justified, the statements of Debtor's

counsel evidence the close relationship among this trio of talc-related chapter 11 cases.

9.      The close relationship among (i) the debtors in the Imerys and Cyprus Mines

Bankruptcy Cases, and (ii) J&J, the Debtor and other J&J affiliates with respect to talc personal

injury claims stemming from talc-containing product of J&J and affiliates is a unique dimension

of this case that makes the Delaware Bankruptcy Court—which has presided over the Imerys

Bankruptcy Case for over two and one-half years-- the most appropriate transferee forum for the

Debtor's case.

---

[10]     The superficially benign nature of the Debtor's assurances about its desire to take advantage of progress made
in the negotiations with claimant representatives in the Imerys Bankruptcy Case that took place before the
Debtor came into being (*see* Jones Dec. Exh. A (First Day Transcript) at 41:14-20) are, however, belied by the
Debtor's initiation of a new bankruptcy case in a jurisdiction 600 miles away from the Imerys Bankruptcy Case
to address the talc personal injury claims that were the subject of those prior negotiations. The primary element
that the newborn Debtor's chapter 11 filing has added to the negotiating dynamic is the threat of years of delay
as this case drags on if the result of a new round of negotiations is not more to J&J's liking than that of the last
round of negotiations that preceded the filing of this Chapter 11 Case.

6

10.     Indeed, the Debtor has characterized cosmetic talc personal injury litigation as a "new mass tort," different in kind and involving different issues than "traditional" asbestos litigation. *Informational Brief of LTL Management LLC* [Docket No. 3] at 43-50. As far as Movants know, the Imerys Bankruptcy Case is the first chapter 11 case to center around this "new mass tort;" and the Delaware Bankruptcy Court, which has spent over two and one half years overseeing that case, was, until the filing of this case, the only Bankruptcy Court to oversee such a case.

11.     The entanglements between the debtors in the Imerys and Cyprus Mines Bankruptcy Cases and J&J and affiliates go back more than 30 years. The history of these relationships can be found in filings by each of the parties demonstrating that the claims in these cases are inter-related and not only arise from the same original product, but also from many of the same contracts and indemnification agreements. *See* Jones Dec. Exh. E (J&J Protocol Motion) at ¶¶ 10-15;[11] *Id*. Exh. F (Cyprus First Day Declaration) at ¶ 31;[12] *Id.* Exh. G (Excerpts Imerys Disclosure Statement) at 23-25, 27-28, 40-42.[13]

12.     In 1989, J&J sold the stock of the entity that is now Imerys Talc Vermont (one of the debtors in the Imerys Bankruptcy Case) to Cyprus Mines.[14] Thousands of the talc-related personal injury claims being asserted against the Debtor and J&J relate to talc mined and

---

[11]   Attached as **Exhibit E** to the Jones Dec. is *Johnson & Johnson's Motion Pursuant to 11 U.S.C. § 362(d)(1), Fed. R. Bankr. P. 4001, and Local Bankruptcy Rule 4001-1 for Entry of Order Modifying Automatic Stay to Permit Defense of Certain Talc Claims and Implement Talc Litigation Protocol* (without exhibits) filed in the Imerys Bankruptcy Case at Docket No. 1567.

[12]   Attached as **Exhibit F** to the Jones Dec. is the *Declaration of D. J. (Jan) Baker, Independent Director of the Debtor, in Support of Chapter 11 Petition and First Day Pleadings* (the "Cyprus First Day Dec.") filed in the Cyprus Mines Corporation bankruptcy case in the Bankruptcy Court for the District of Delaware, Case No. 21-10398 [Docket No. 7].

[13]   Attached as **Exhibit G** to the Jones Dec. are excerpts from the *Disclosure Statement For Ninth Amended Joint Chapter 11 Plan of Reorganization of Imerys Talc America, Inc. and its Debtor Affiliates Under Chapter 11 of the Bankruptcy Code* (the "Imerys Disclosure Statement").

[14]   The corporate history relating to the purchase of Windsor Minerals, Inc., and how that entity came to be Imerys Talc Vermont, are described in detail in the Cyprus First Day Dec. at ¶¶ 20-23.

7

provided by Cyprus Mines and Imerys to J&J and affiliates; and both Cyprus Mines and Imerys

assert significant claims for indemnity against the Debtor and J&J, including direct claims

against J&J. *See Id.* Exh. F (Cyprus Mines First Day Dec.) at ¶ 31; *Id.* Exh. G (excerpts from

Imerys Disclosure Statement) at 23-25.  The Imerys Debtors further assert that they have rights

to insurance policies issued to J&J.   *See Id.* Exh. G (excerpts from Imerys Disclosure Statement)

at 27-28, 40-42.  J&J, for its part, disputes indemnification liability and also claims to have

indemnification claims of its own against Imerys and Cyprus.  *See Id.* Exh. E (J&J Protocol

Motion) at ¶¶ 10-15.  In fact, the tie between talc personal injury claims asserted against J&J and

its affiliates and those asserted against the Imerys Debtors is underscored by the fact that J&J

sought relief from the stay in the Imerys Bankruptcy Case so that the MDL Proceeding[15] could

go forward against the Imerys Debtors, because of the interrelationship of those claims with the

claims against J&J.  *See Id.*

13.    While J&J and affiliates (including the newly-created Debtor), Imerys, Cyprus

Mines and the insurance companies argue over who is responsible for talc-related personal injury

claims stemming from the use of J&J talc product, individuals suffering from ovarian cancer and

mesothelioma are stuck in the middle of this stand-off, even as they face serious illness and

death.  As the Debtor's counsel acknowledged, a coordinated resolution of all three cases may be

the most efficient and direct approach to provide recoveries to the plaintiffs.  Transferring this

case to the Delaware Bankruptcy Court, where the first two in the trio of intertwined talc mass

tort bankruptcies stemming from talc personal injury claims based on J&J talc products are

already pending—in the case of Imerys, for over two and one half years-- will be most efficient

---

[15]    The "MDL Proceeding" refers to *In re: Johnson & Johnson Talcum Powder Products Marketing, Sales Practices and Products Liability Multi-District Litigation* (MDL No. 2738) pending before the United States District Court for the District of New Jersey.

and serve the interests of justice and the convenience of the parties, who are already well-engaged in the pending Delaware cases.

14.    In light of the acknowledged connections among this trio of talc chapter 11 cases, and recognizing that the Delaware Bankruptcy Court has been addressing the kinds of issues that will be involved in the resolution of this case, and with largely the same parties, Movants respectfully submit that the convenience of the parties and the interests of justice will be best served by transferring this case to Delaware.

15.    In the alternative, this case should be transferred to the District of New Jersey in light of the multiple close connections of the Debtor to that State, which stand in sharp contrast to the Debtor's tenuous and newly-created connection to this District.

## JURISDICTION, VENUE, AND STATUTORY PREDICATES

16.    This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. §1334.  This is a core proceeding pursuant to 28 U.S.C. §157(b) and may be determined by the Bankruptcy Court.  For purposes of a hearing on this Motion, venue in this Court is proper pursuant to 28 U.S.C. §§1408 and 1409.  The statutory predicates for the relief sought herein are Judicial Code section 1412, Bankruptcy Rule 1014, and section 105(a) of title 11 of the United States Code (the "Bankruptcy Code").

## FACTUAL BACKGROUND

17.    According to the Declaration of John J. Kim in Support of First Day Pleadings [Docket No. 5] (the "Kim Declaration"), the Debtor traces its roots back to J&J Baby Products, a New Jersey company incorporated in 1970 as a wholly-owned subsidiary of J&J.[16]

---

[16]    The Kim Declaration details the corporate history leading to the creation of the Debtor and the alleged assumption by the Debtor of certain historic talc-related liabilities arising from JOHNSON'S® Baby Powder and other talc-containing products manufactured and sold by the Debtor's predecessor entities.  Kim

9

18.     Kim describes the corporate restructuring that gave birth to the Debtor two days

before it filed for bankruptcy as follows:

> In 2021, Old JJCI implemented a corporate restructuring (the
> "2021 Corporate Restructuring"), which was completed on
> October 12, 2021.  As a result of that restructuring: Old JJCI
> ceased to exist and two new entities were created: (a) the Debtor in
> this case, which was initially formed as a Texas limited liability
> company and then converted into a North Carolina limited liability
> company; and (b) another entity, which was initially formed as a
> Texas limited liability company and then merged into a New
> Jersey corporation that was its direct parent (as well as the direct
> parent of the Debtor), whereupon this entity changed its name to
> "Johnson & Johnson Consumer Inc." ("New JJCI").  As a result of
> the 2021 Corporate Restructuring, the Debtor holds certain of Old
> JJCI's assets and is solely responsible for the talc related liabilities
> of Old JJCI and New JJCI holds all other assets of Old JJCI and is
> solely responsible for all other liabilities of Old JJCI.

Kim Declaration at ¶ 16.

19.     "The Debtor was formed to manage and defend thousands of talc-related claims

and to oversee the operations of its subsidiary, Royalty A&M[,]" and to "enable the Debtor to

globally resolve talc-related claims through a chapter 11 reorganization without subjecting the

entire Old JJCI enterprise to a bankruptcy proceeding." *Id.* at ¶¶ 18, 20.

20.     The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

*Voluntary Petition for Non-Individuals Filing for Bankruptcy* [Docket No. 1] at 1.

21.     The Debtor's employees are provided through services agreements (the "Services

Agreements") with J&J Services.  Pursuant to those Services Agreements, J&J Services also

provides the Debtor with certain corporate and administrative services, including treasury and

procurement, corporate finance, accounting, human resources, information technology, legal,

risk management, tax and other support services and has seconded employees to the Debtor,

---

Declaration at ¶¶ 9-16, 20-25.  Capitalized terms used and not otherwise defined herein have the meanings
ascribed thereto in the Kim Declaration.

including the Debtor's Chief Legal Officer, on a full-time basis to manage the Debtor.  Kim

Declaration at ¶ 29.

22.     J&J Services is located at 1 Johnson & Johnson Plaza, New Brunswick, New

Jersey 08933. Jones Dec. Exh. H (Bloomberg Page).[17]  The Debtor has no employees in North

Carolina.  *Id.* Exh. I (First Day Transcript II) at 46:9-12.[18]

23.     The Debtor's primary asset is its interest in the Funding Agreement through

which J&J and New JCCI have agreed to provide, among other consideration, an initial $2.0

billion dollars to the Debtor to fund a qualified settlement trust for the payment of talc liability

claims. Kim Declaration at ¶ 27.

24.     The Debtor's next most significant asset is its interests in certain insurance

policies.  *Id*. at ¶¶ 46-53. The Debtor asserts that the limits of the primary and excess insurance

policies potentially covering talc-related liabilities issued by solvent insurers are in excess of

$1.95 billion.  *Id.* at ¶ 52. There is currently a coverage action pending in the Superior Court of

Middlesex Count, New Jersey with respect to the coverage for talc-related liability provided by

these policies. *Id.* at ¶ 54.

25.     The Debtor claims to be facing over 38,000 ovarian cancer claims, approximately

35,000 of which are said to be claims subject to the MDL Proceeding pending in New Jersey.

The remainder are pending in state court cases across the country but primarily focused in New

Jersey and California.  *Informational Brief of LTL Management LLC* [Docket No. 3] at 124.  The

Debtor has not identified any litigation asserting such claims against it in this State, let alone in

this District.

---

[17]    Attached as **Exhibit H** to the Jones Dec. is a print-out from www.bloomberg.com identifying the location of
J&J Services.
[18]    A true and correct copy of portions of the Transcript of Hearing dated October 21, 2021 (the "First Day
Transcript II") cited herein is attached as **Exhibit I** to the Jones Dec.

DOCS_NY:44338.12 05471/002

26.     The Debtor identified the thirty (30) law firms which it claims represent the largest number of claimants in this case.  According to that list, those law firms are spread across the country, but no firm was identified with an address in North Carolina.  *See Voluntary Petition: Chapter 11 Case: List of 30 Law Firms with the Most Significant Representations of Talc Claimants* [Docket No. 1]. The law firms identified on that list are located in the following States: Alabama, California, Delaware, District of Columbia, Florida, Illinois, Missouri, New Jersey, New York, Pennsylvania, Texas, Virginia, and West Virginia.  *Id.*  Notably, sixteen (16) of these law firms were also identified on the list of top thirty (30) law firms filed in the Imerys Bankruptcy Case.  Additionally, seven (7) of those law firms represent members of the Official Committee of Tort Claimants in the Imerys Bankruptcy Case.  *See* Jones Dec. Exh. D (Significant Law Firm Chart).

27.     According to the Debtor's Master Creditor List [Docket No. 4], only .02% of its identified creditors are located in North Carolina.

28.     In addition to the tens of thousands of individual talc-related personal injury claims, the Debtor and J&J are facing billions of dollars in asserted claims for indemnification from Cyprus Mines (*see Reservation of Rights and Preliminary Objection of Cyprus Mines Corporation to Debtor's Emergency Motion to Enforce the Automatic Stay Against Tal Claimants who Seek to Pursue Their Claims Against the Debtor and its Non-Debtor Affiliates* [Docket No. 100]) and from Imerys which, in addition to asserting direct indemnification claims, also asserts entitlement to recovery for talc-related liability from J&J insurance policies (*see* Jones Dec. Exh. G (excerpts from Imerys Disclosure Statement) at 40-42.

29.     As explained by Debtor's counsel at the First Day Hearing, there are multiple material connections and claims among Imerys, Cyprus, J&J and the Debtor:

12

> So Imerys was a former talc supplier for Old JJCI.  Imerys as well
> as Cyprus Mines Corporation, which owns certain Imerys mines
> that supplied Old JJCI, have each filed their own chapter 11 cases.
> Imerys filed in February 2019.  Cyprus Mines filed in February of
> 2021. Both cases are pending in the District Court in Delaware, the
> Bankruptcy Court in the District of Delaware.  Your Honor
> probably noticed from the papers that both Imerys and Cyprus
> contend that they have claims against Old JJCI and J&J for
> indemnification related to potential liability they have for personal
> injury claims arising from exposure to talc they sold to Old JJCI.
> They've each filed an adversary proceeding against Old JJCI and
> J&J in the Imerys bankruptcy case and they seek declaratory
> judgments with respect to certain indemnity agreements.  The
> debtor and J&J contest the claims in those adversary proceedings.

Jones Dec. Exh. A (First Day Transcript) at 38:16-39:5.  The Debtor's counsel also explained

that, of the 38,000 pending talc lawsuits against the Debtor as of the petition date, about 18,000

were also against Imerys. *Id.* at 39:14-17.

30.     As if to underscore the connection between this case and the Imerys Bankruptcy

Case, Debtor's counsel argued that meaningful negotiations could occur in this case almost

immediately because of the negotiations that had already occurred (and failed) in connection

with the Imerys Bankruptcy Case:

> And I would say, your Honor, that in this case there's reason to
> believe that, unlike the asbestos cases that are currently pending
> before your Honor, meaningful negotiations can occur virtually
> immediately and that's because negotiations with claimant
> representatives in the Imerys case were relatively far along and as
> a result, the parties have a head start on the work that needs to be
> done to reach an agreement.

*Id.* at 41:14-20.

31.     Even more significantly, Debtor's counsel posited that the filing of the Debtor's

case created  an opportunity for the concurrent resolution of the Imerys, Cyprus Mines and

Debtor cases:

> LTL intends shortly to file a motion asking that the Court direct the
> parties to mediation in this chapter 11 case. . . . [I]n addition . . .the
> debtor is considering filing a similar motion in the Imerys and
> Cyprus Mines chapter 11 case, cases[19] ***asking Judge Silverstein to
> direct the parties in those cases to participate in the mediation,
> any mediation ordered in this case.*** And I would just say, your
> Honor, that due to the current status of the Imerys and Cyprus
> cases and the filing of this one we believe ***we have a unique
> opportunity to get the parties to the table to see if an overall
> resolution can be achieved in all three cases***.

Jones Dec. Exh. A (First Day Transcript) at 41:21-42:8 (emphasis added).

32.     Thus, as the Debtor itself recognizes, and as noted above (supra ¶¶ 7-12), its case

is closely tied to the Imerys and Cyprus Mines Bankruptcy Cases.  Movants submit that having

all three interrelated cases pending in the same Court will promote judicial efficiency, facilitate

the resolution of all the cases, including that of the Debtor, and will be in the interests of justice

and serve the convenience of the parties.

### BASIS FOR RELIEF REQUESTED

A.     **Statutory Framework for Transfer of Venue**

33.     Section 1412 of the Judicial Code governs transfer of venue and provides that "[a]

district court may transfer a case or proceeding under title 11 to a district court for another

district, in the interest of justice or for the convenience of the parties."  28 U.S.C. § 1412.

---

[19]     Any mediation motion or motions filed by the Debtor in the Imerys and Cyprus Mines Bankruptcy Cases
would join an already-crowded field of mediation motions in those cases. On October 25, 2021, certain of the
insurers involved in the Imerys Bankruptcy Case filed a motion seeking mediation of certain issues in the
Imerys Bankruptcy Case.  *Moving Insurers' Motion For Entry of an Order (I) Appointing a Mediator, (II)
Referring Certain Matters to Mandatory Mediation, and (III) Granting Related Relief* filed in the Imerys
Bankruptcy Case [Imerys Bankruptcy Case Docket No. 4290].  On October 26, 2021, the Imerys Debtors also
filed a motion seeking mediation of certain insurance matters relating to Cyprus Mines.  [Imerys Bankruptcy
Case Docket No. 4291].  On October 27, 2021, Cyprus and the future claims representative in the Cyprus
Bankruptcy Case filed the *Joint Motion of the Cyprus Debtor and the Cyprus Future Claimants' Representative
for Entry of an Order (I) Appointing Mediator, (II) Referring Certain Matters to Mediation, and (III) Granting
Related Relief* [Imerys Bankruptcy Case Docket No. 4295].

14

34.     Bankruptcy Rule 1014 implements the foregoing venue statute and provides that where a case is filed in a proper district, the court "may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties."  Fed. R. Bankr. P. 1014(a)(1).

35.     Assuming venue of a bankruptcy case is proper in the district where it has been filed, a party-in-interest may seek to have the case transferred to any other district. 28 U.S.C. §1412; *see also In re Statewide Theatres Corp.*, 4 F. Supp. 87 (D. Del. 1933) (finding expansive standing for parties to challenge venue).

36.     The case law is clear that, under section 1412, the district to which venue is transferred need not be a district in which the case could have been commenced initially; and Bankruptcy Rule 1014(a)(1) confirms this point by permitting a transfer to "*any* other district," without limitation.  (emphasis added).  *See, e.g., In re Emerson Radio Corp.,* 52 F.3d 50, 55 (3d Cir. 1995) (finding that "neither 28 U.S.C. § 1412 nor Rule 1014(b) includes a limitation that a case may be transferred only to a district in which it could have been brought"); *Brown v. Fargo*, 463 B.R. 332, 337 (M.D.N.C. 2011) (finding that, unlike 28 U.S.C. § 1404(a), a determination under 28 U.S.C. § 1412 rests solely on "the interest of justice," and "the convenience of the parties"); *Gibbs v. Rees*, Civil Action No. 3:17cv386, 2018 U.S. Dist. LEXIS 48680, *17 (E.D. Va. Mar. 23, 2018) (holding section 1412 contains no requirement that the transferee district be one in which the action might have been brought in the first instance).

37.     Section 1412 sets forth two independent grounds for transferring venue in the disjunctive: "A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."  *In re Patriot Coal Corp.*, 482 B.R. 718, 738-39 (Bankr. S.D.N.Y. 2012); *In re Grand Dakota Partners, LLC,*

15

573 B.R. 197, 201 (Bankr. W.D.N.C. 2017) (noting that section 1412 is written in the disjunctive making transfer of venue appropriate either in the interests of justice or for the convenience of the parties); *In re LaGuardia Assocs., L.P.*, 316 B.R. 832, 837 (Bankr.E.D. Pa. 2004) (same). Thus, satisfying either prong of the alternative test set forth in the venue transfer statute is sufficient for a court to transfer venue of a case.

38.     As noted in *Grand Dakota Partners* "[a]s a practical matter, in most cases, if the convenience of the parties and witnesses will be served by transfer, it usually follows that justice will also be served by transfer." *Grand Dakota Partners, LLC,* 573 B.R. at 205; *see also B.L. of Miami*, 294 B.R. 325, 334 (Bankr. D. Nev. 2003) (citing *Enron Corp.*, 284 B.R. at 386) (finding that "generally what serves the convenience of the parties will also serve the interest of justice").

39.     The decision whether to transfer venue of a case to another district is within the sound discretion of the court according to an "individualized and case-by-case consideration of convenience and fairness." *Patriot Coal*, 482 B.R. at 739 (citing *Gulf States Exploration Co., v. Manville Forest Prod. Corp. (In re Manville Forest Prod Corp.)*), 896 F.2d 1384, 1391 (2d Cir. 1990); *see also In re Velocita Corp.*, 285 B.R. 188, 190 (Bankr. M.D.N.C. 2002) (same).

40.     Although there is a general presumption in favor of maintaining the Debtor's choice of venue (*Grand Dakota Partners, LLC,* 573 B.R. at 203), the "weight afforded to a debtor's choice is diminished when the choice of forum is not directly related to the operative underlying facts of the case." *Id.*

## 1.     <u>Interest of Justice</u>

41.     This Chapter 11 Case should be transferred to Delaware in the interest of justice. The interest of justice prong is a broad and flexible standard applied on a case-by-case basis. *Grand Dakota Partners, LLC,* 573 B.R. at 205.  In evaluating this prong, "factors considered

16

include whether transferring venue would promote the efficient administration of the bankruptcy

estate, judicial economy, timeliness and fairness." *Id.*; *see also In re Dunmore Homes, Inc.*, 380

B.R. 663, 671-72 (Bankr. S.D.N.Y. 2008) (*citing Enron Corp. v. Aurora (In re Enron),* 317 B.R.

629, 638-39 (Bankr. S.D.N.Y. 2004) (citing similar factors)); *In re Velocita Corp.*, 285 B.R. 188,

190 (Bankr. M.D.N.C. 2002) (citing similar factors).

42.     Judicial and administrative efficiency and economy will be best served by the

transfer of this to Delaware, where the Imerys and Cyprus Mines Bankruptcy Cases are already

pending and where there is an extensive bankruptcy bench with significant experience in these

types of cases—including the Bankruptcy Judge who has overseen the Imerys Bankruptcy Case

for over two and one half years.

43.     This Court has noted that its capacity to handle this case is limited, as it is an

underserved court whose resources are already stretched.  Jones Dec. Exh. A (First Day

Transcript) at 217:6-13.  Considerations of efficient administration, judicial economy, timeliness

and fairness to the parties clearly warrant the transfer of this complex, highly contentious,

docket-consuming chapter 11 case from the docket of an overburdened Court with only two

bankruptcy judges and limited resources, to a Court with greater resources that (i) is already

overseeing two sets of chapter 11 cases which are integrally related to this one; (ii)  has had over

two years to familiarize itself with the kinds of issues that can arise in a talc mass tort chapter 11

case; and (iii) would be in a position to coordinate any mediation in the Debtor's chapter 11 case

with mediation in the Imerys and Cyprus Mines Bankruptcy cases.

44.     In light of these factors and Delaware's proximity to New Jersey (and the ease of

car and train travel between the two neighboring states), the Movants respectfully submit that the

interest of justice will be served by the transfer of this case to Delaware.

17

2.    **Convenience of the Parties**

45.    Courts in North Carolina consider six factors when evaluating the "convenience

of the parties" prong of section 1412: "(i) proximity of creditors of every kind to the court; (ii)

proximity of the debtor; (iii) proximity of witnesses necessary to administer the estate; (iv)

location of the assets; (v) economic administration of the estate; and (vi) necessity for ancillary

administration if a liquidation should occur." *Grand Dakota Partners, LLC,* 573 B.R. at 201-202;

*see also In re Mainline Contracting, Inc*., 2009 WL 3785568 (Bankr. E.D.N.C. 2009) (citing

same factors); *In re Lakota Canyon Ranch Development, LLC.,* Case No. 11-03739-8, 2011 WL

5909630, at *3 (Bankr. E.D.N.C. 2011) (citing same factors and transferring case to Colorado

after determining, among other things, that the location of the debtor's assets, the appraiser, and

the experts would most likely be from Colorado, and the estate should not bear expenses of

transporting those witnesses). "The consideration given the most weight is the economic and

efficient administration of the estate." *Id.* Courts have also considered the learning curve if a

case is transferred and the ability of interested parties to participate in the proceedings and the

additional costs that might be incurred in doing so. *Id.*

46.    Here, the factors considered when evaluating the convenience of the parties

support transferring venue:

- <u>Proximity of Creditors</u>:

  o As a practical matter, the thousands of individual talc personal injury
    claimants who make up the lion's share of the creditors in this case will
    not be travelling to Bankruptcy Court—their counsel will do so. None of
    the thirty (30) law firms listed by the Debtor as having the largest number
    of clients with claims in this case are located in North Carolina—they are
    located in the States of Alabama, California, Delaware, District of
    Columbia, Florida, Missouri, New Jersey, New York, Pennsylvania,
    Texas, Virginia and West Virginia. *See Voluntary Petition: Chapter 11
    Case: List of 30 Law Firms with the Most Significant Representations of
    Talc Claimants* [Docket No. 1].

18

- o  Imerys and Cyprus Mines are major creditors asserting multi-billion dollar indemnification claims against the Debtor and are probably the Debtor's largest creditors (and have filed adversary proceedings in their respective chapter 11 cases seeking to enforce their indemnity claims against J&J and Old JJC&I (now the Debtor); those chapter 11 cases and adversary proceedings are pending before the same Bankruptcy Judge in the District of Delaware.  Kim Declaration at ¶¶ 55-56.

  - o  According to the Debtor's Master Creditor List, only .02% of the Debtor's creditors are located in North Carolina.  Debtor's Master Creditor List [Docket No. 4].

- Proximity of Debtor:

  - o  The Debtor lists its address in New Jersey, in the corporate park that is J&J's worldwide headquarters. Jones Dec. Exh. B (pages from Google Maps).

  - o  The Debtor is less than 100 miles from the Delaware Bankruptcy Court (as opposed to over 600 miles from this Court).  *Id.*

  - o  The Debtor is already involved in the MDL Proceeding pending in Trenton New Jersey, a little more than 60 miles from the Delaware Bankruptcy Court.  *Id.*

- Proximity of Witnesses:

  - o  As this Court noted, there will likely be issues of fraudulent transfer with respect to the corporate restructuring that created the Debtor.  Jones Dec. Exh. A (First Day Transcript) at 156:22-157:8.  The key witnesses (including Mr. Kim), and corporate documents and records relating to any such action are, upon information and belief, located at the Debtor's and J&J's headquarters in New Jersey—and far closer to Delaware than to North Carolina.

  - o  Similarly, to the extent there is litigation regarding bad faith or substantive consolidation, those witnesses and corporate documents and records will also likely be located at Debtor's and J&J's headquarters in New Jersey.

  - o  Though incorporated in North Carolina, the Debtor does not identify an address or any employees located there.

  - o  As noted above, the vast majority of the cases asserting talc-related claims are located in New Jersey; hence, the witnesses relating to those claims are already in or prepared to appear in New Jersey.  Moreover, the Debtor's and J&J's corporate witnesses and records relating to those claims, upon

information and belief, are also located at J&J's world headquarters in New Jersey.

- o The MDL Proceeding is before the court in Trenton New Jersey, and so is close to the Delaware Bankruptcy Court – much more so than to this Court.

- o J&J, a number of the plaintiffs' counsel, and other stakeholders are already substantially involved in the Imerys Bankruptcy Case, demonstrating the ability of those parties conveniently to access the Delaware Bankruptcy Court.  In fact, a comparison of the list of the thirty law firms with the most claims in each of the Debtor's case and in the Imerys Bankruptcy Case, shows that sixteen (16) of these firms appear on each list, and seven (7) of these firms represent clients on the Official Committee of Tort Claimants in the Imerys Bankruptcy Case.  *See* Jones Dec. Exh. D (Significant Law Firm Chart).

- • Location of Assets:

  - o Though the Debtor maintains a bank account in North Carolina and has ownership interests in Royalty A&M incorporated in North Carolina, its most significant assets are located in New Jersey.  The Debtor's most significant asset is its rights under the Funding Agreement and the obligations of two New Jersey entities, J&J and New JJCI (both incorporated in and with significant operations in New Jersey) to the Debtor under the Funding Agreement.[20]

  - o The Debtor's next most significant asset is its interest in $1.95 billion of potential insurance coverage.  Kim Declaration at ¶ 52. There is currently a coverage action pending in the Superior Court of Middlesex Count, New Jersey with respect to the coverage for talc-related liability covered by these policies. *Id.* at ¶ 54.  Hence the parties are already preparing to present witnesses and evidence in New Jersey.

- • Economic Administration:

  - o The economic administration of the Debtor's estate will be best served in the Delaware Bankruptcy Court.

  - o As the Debtor acknowledged, Imerys and Cyprus Mines (both with significant overlap with this case in talc claimants) are integral parties in this case and each have existing chapter 11 cases pending in Delaware. Addressing all of these cases in the same Bankruptcy Court and pursuing

---

[20]   The location of an asset based on a contractual right is the situs of the party whose obligation it is to perform under the contract.  *See In re Mainline Contracting, Inc.*, 2009 Bankr. LEXIS 3644, *5 (Bankr. E.D.N.C. 2009); *In re Bd. of Dirs. Of Hopewell Int'l. Ins. Ltd.*, 238 B.R. 25, 48 (Bankr. S.D.N.Y. 1999).

the Debtor's professed goal of attempting to resolve the significant talc-related liability in all three mass tort chapter 11 cases will be best served by coordination of the three cases, including any mediation, in the same District.

o   The Imerys Bankruptcy Case has been pending for over two and a half years (and the Cyprus Mines Bankruptcy Case for eight months) before the same Bankruptcy Judge in Delaware; and the Delaware Bankruptcy Court is well-versed in the issues and circumstances of each of those cases, including issues that may be unique to a talc-related mass tort chapter 11 case.

o   In sum, as discussed above, *supra* ¶¶ 7-12; 26-31, the three pending talc-related chapter 11 cases—two in Delaware and this one in North Carolina—are closely connected to one another; and a coordinated resolution with all of the cases in the same jurisdiction will facilitate judicial economy and economic administration of the Debtor's case.

47.    Thus, each of the applicable factors in this case supports the transfer of venue for the convenience of the parties to Delaware or, in the alternative, New Jersey.

## NO PRIOR REQUEST

48.    The Movants have made no prior request for the relief sought herein.  The Bankruptcy Administrator and the MDL Plaintiffs' Steering Committee have each filed motions seeking to transfer venue to New Jersey.  *Motion of Bankruptcy Administrator to Transfer Venue of Bankruptcy Case Pursuant to 28 U.S.C. § 1412 and Fed. R. Bankr. P. 1014(A)(1) in Interests of Justice or for the Convenience of Parties* [Docket No. 205]; *Motion of the MDL Plaintiffs' Steering Committee To Transfer Venue Pursuant To 28 U.S.C. § 1412 And Joinder In Bankruptcy Administrator's Motion To Transfer Venue* [Docket No.235].

## NOTICE

49.    Notice of this Motion has been given to (a) counsel to the Debtor; (b) the Bankruptcy Administrator; (c) J&J Parent; (d) New JCCI, and (e) all parties who have filed

21

notices of appearances.  The Movants respectfully submit that no other or further notice need be given.

## **CONCLUSION**

50.    For the reasons and based on the authorities set forth above, this case should be transferred to a more appropriate venue (Delaware or, in the alternative, New Jersey) in the interest of justice and for the convenience of the parties in accordance with section 1412 of the Judicial Code.  The stakeholders in this case will be best served by the transfer of this case to the District of Delaware.

DOCS_NY:44338.12 05471/002

**WHEREFORE**, the Movants respectfully request the entry of an order (a) transferring venue of the Debtor's case to the District of Delaware, or, alternatively, to the District of New Jersey, and (b) granting such other and further relief as may be just and proper.

Dated: November 3, 2021                    **MOON WRIGHT AND HOUSTON, PLLC**


                                    _/s/ Andrew T. Houston_
                                    Richard S. Wright (NC Bar No. 24622)
                                    Andrew T. Houston (NC Bar No. 36208)
                                    Caleb Brown (NC Bar No. 41131)
                                    121 West Trade Street, Suite 1950
                                    Charlotte, North Carolina 28202
                                    Telephone: (704) 944-6560
                                    Facsimile:  (704) 944-0380
                                    Email:

                                    -and-

                                    **PACHULSKI STANG ZIEHL & JONES LLP**
                                    Laura Davis Jones
                                    Karen B. Dine
                                    Peter J. Keane
                                    919 N. Market Street, 17th Floor
                                    P.O. Box 8705
                                    Wilmington, DE 19899-8705 (Courier 19801)
                                    Telephone: (302) 652-4100
                                    Facsimile: (302) 652-4400
                                    Email: ljones@pszjlaw.com
                                         kdine@pszjlaw.com
                                         pkeane@pszjlaw.com

                                    _Proposed Co-Counsel for Arnold & Itkin LLP_

23