**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

|   |   |
|---|---|
| In re:<br><br>LTL MANAGEMENT LLC,[1]<br><br>Debtor. | ) Chapter 11<br>)<br>) Case No. 21-30589 (JCW)<br>)<br>) Re: Bankr. Docket Nos. 205, 208, 235, 312, 340<br>) |

**RESPONSE OF AYLSTOCK, WITKIN, KREIS & OVERHOLTZ, PLLC TO ORDER TO SHOW CAUSE WHY VENUE SHOULD NOT BE TRANSFERRED TO ANOTHER DISTRICT AND JOINDER IN CERTAIN RELATED FILINGS**

Aylstock, Witkin, Kreis & Overholtz, PLLC ("AWKO"), on behalf of thousands of holders of talc personal injury claims, hereby responds to the *Order to Appear and Show Cause Why Venue Should not be Transferred to Another District* [Docket No. 208] ("Venue OSC") and joins in certain other responses and filings related to the Venue OSC.[2]

1. The Debtor's bankruptcy case is the latest and least seemly example of an "attorney designed strategy"[3] pitched by the Debtor's counsel to companies facing mass tort litigation. The strategy uses two jurisdictions – Texas (because of its divisional merger statute) and North Carolina to split a tortfeasor into a "GoodCo" and a "BadCo" and put the latter into bankruptcy.

---

[1] The last four digits of the Debtor's taxpayer identification number are 6622. The Debtor's address is 501 George Street, New Brunswick, New Jersey 08933.

[2] AWKO joins in the following responses and/or motions to the extent consistent herewith: (i) *Motion of Bankruptcy Administrator to Transfer Venue of Bankruptcy Case [Etc.]* [Docket No. 205] (the "BA Motion"); (ii) *Motion of the MDL Plaintiffs' Steering Committee to Transfer Venue [Etc.]* [Docket No. 235] (the "PSC Motion"); (iii) *Response to Order to Show Cause and Motion of Arnold & Itkin LLP … to Transfer Venue of this Chapter 11 Case [Etc.]* [Docket No. 312] (the "Arnold & Itkin Response"); and (iv) *Kellie Brewer's Response in Support of [BA Motion]* [Docket No. 340]. AWKO also joins in any other responses to the Venue OSC or motions to transfer venue, including any response or motion filed by the recently appointed Official Committee of Talc Claimants, to the extent consistent herewith.

[3] *In re Aldrich Pump LLC*, 2021 WL 3729335, at *19 n.156 (Bankr. W.D.N.C. Aug. 23, 2021).

2. Selection of these two jurisdictions was deliberate. There are other, more natural, jurisdictions that were eschewed. For example, the Debtor could have proceeded with its "corporate restructuring" in Delaware, which also has a divisional merger statute, *see* DEL. CODE ANN. tit. 6, § 18-217, and then filed the chapter 11 case in that district, which of course has a robust bankruptcy bench. Or, having reincorporated in Texas and exploited that state's divisional merger statute, the Debtor could have stayed in Texas (which also has a robust bankruptcy bench and is where the Debtor's bankruptcy counsel is located) for its chapter 11 case.

3. Instead, the Debtor availed itself of the Texas statute and then reincorporated from Texas to North Carolina, a state with no conceivable relationship to the Debtor, to file its petition. The Court, the Bankruptcy Administrator, and other claimants have already highlighted the Debtor's lack of any meaningful connections to this District.[4] Indeed, this Debtor's ties to North Carolina are even weaker than the tenuous connections in prior "Texas Two Step" cases. *See In re DBMP LLC*, 2021 WL 3552350, at *9 (Bankr. W.D.N.C. Aug. 11, 2021) (debtor owned a manufacturing plant in North Carolina and had been a North Carolina entity 46 times longer before filing for bankruptcy than the Debtor here); *Aldrich*, 2021 WL 3729335, at *4 (both the debtor and its "GoodCo" affiliate were headquartered in North Carolina).

4. Given the absence of any legitimate business reason for filing in this District, the filing appears to be blatant forum-shopping.[5] *Cf.* Oct. 20, 2021 Hr'g Tr. at 218:6-8

---

[4] *See, e.g.*, Venue OSC at 2 (noting the Debtor's lack of employees, assets, and operations in North Carolina); BA Motion at 9 (discussing the Debtor's "limited, manufactured, and recent" connections to North Carolina); PSC Motion ¶ 3 (summarizing the Debtor's "contrived and tenuous at best" connections to North Carolina).

[5] *Cf.* Jones Day Newsletter, "Choice of Bankruptcy Venue: Sound Strategy or Forum Shopping?" (March/April 2007 Newsletter), *available at* https://www.jonesday.com/en/insights/2007/04/choice-of-bankruptcy-venue--sound-strategy-or-forum-shopping.

("COURT: … I can think of no reason offhand why the Western District of North Carolina needs to be the arbiter of [divisional merger bankruptcy cases] for all Circuits and courts.").

5. The unseemliness of this strategy has caught the public eye. For example, Professor Stephen Lubben notes that "[f]urther manipulation of the venue statute by creating entities for the sole purpose of filing in a particular jurisdiction does push this to an extreme that is likely to undermine faith in the bankruptcy system."[6] Moreover, bankruptcy venue reform has been a perennial hot topic in Congress,[7] and although there are compelling arguments on both sides of that debate, no one would argue that the rank gamesmanship employed here is proper. Indeed, a proposed bill would prohibit precisely the conduct that occurred here. *See* Nondebtor Release Prohibition Act of 2021, H.R. 4777, 117th Cong. § 4 (2021) (act would require dismissal of bankruptcy filings following divisional mergers that have the intent or effect of separating material assets from material liabilities).

6. The unique and troubling circumstances of this bankruptcy filing call for not just justice, but the appearance of justice. *See Offutt v. United States*, 348 U.S. 11, 14 (1954). This case should be transferred in order to further the interest – and the appearance – of justice. Two venues are mentioned in the Venue OSC: New Jersey and Delaware. No party has argued for any other jurisdiction. The case in favor of New Jersey centers on J&J's headquarters there and the pending multi-district litigation, as the PSC Motion forcefully argues. *See* PSC Motion ¶¶ 30-43. AWKO submits, however, that the bankruptcy-specific concerns and circumstances

---

[6] Jonathan Randles, *J&J Used Lenient Bankruptcy Rules to Push Talc Liabilities to Charlotte*, Wall Street Journal (Oct. 18, 2021), *available at* https://www.wsj.com/articles/j-j-used-lenient-bankruptcy-rules-to-push-talc-liabilities-to-charlotte-11634602947.

[7] *See, e.g.*, Jonathan Randles, *Dozens of States Back Bankruptcy Venue Reform*, Wall Street Journal (Feb. 21, 2020), *available at* https://www.wsj.com/articles/dozens-of-states-back-bankruptcy-venue-reform-11582325678

that will arise in this case make the neighboring District of Delaware the more appropriate venue for this case.

7.   The Delaware bench is unquestionably capable of devoting the vast resources that will be required to oversee this case.  That is especially true given that the *Imerys*[8] and *Cyprus Mines*[9] cases are already pending before a single bankruptcy judge (Judge Silverstein) and are at relatively advanced stages.  The Imerys debtors were exclusive suppliers of talc to J&J and affiliates for many years.  Cyprus Mines Corporation purchased certain talc mining operations from J&J in 1989 and sold those operations to Imerys in 1992.  As the Court has heard throughout the preliminary injunction hearing testimony, those two cases are inextricably intertwined with the Debtor's case.  The entanglements between J&J and the debtors in those two cases are set forth in greater detail in the Arnold & Itkin Response.  *See, e.g.*, Arnold & Itkin Response ¶¶ 29-32.  In fact, the Debtor previewed its intent to seek mandatory mediation from the Delaware Bankruptcy Court with respect to the parties in the *Imerys* and *Cyprus Mines* cases.  *See* Oct. 20, 2021 Hr'g Tr. at 41:21-42:4.  In light of these unique circumstances, the transfer of this case to Delaware would best "promote the efficient administration of the bankruptcy estate, judicial economy, timeliness and fairness."  *In re Grand Dakota Partners, LLC*, 573 B.R. 197, 205 (Bankr. W.D.N.C. 2017).

8.   Accordingly, AWKO respectfully requests that the Court transfer this case to the District of Delaware or, in the alternative, New Jersey, in the interest of justice and for the convenience of the parties in accordance with section 1412 of the Judicial Code, 28 U.S.C. § 1412.

---

[8]   *In re Imerys Talc America, Inc., et al.*, jointly administered under Case No. 19-10289 (LSS) (Bankr. D. Del.).
[9]   *In re Cyprus Mines Corp*, Case No. 21-10398 (LSS) (Bankr. D. Del.).

Dated: November 5, 2021

Respectfully submitted,

**OFFIT KURMAN, P.A.**

/s/ Paul R. Baynard
Paul R. Baynard (NC Bar No. 15769)
301 South College Street, Suite 2600
Charlotte, North Carolina 28202
Telephone: (704) 377-2500
Email: Paul.Baynard@offitkurman.com

- and -

**KTBS LAW LLP**
Michael L. Tuchin (*pro hac vice*)
Robert J. Pfister (*pro hac vice*)
Samuel M. Kidder (*pro hac vice*)
Nir Maoz (*pro hac vice*)
1801 Century Park East, 26th Floor
Los Angeles, California 90067
Telephone:    (310) 407-4000
Facsimile:    (310) 407-9090
Email:    mtuchin@ktbslaw.com
         rpfister@ktbslaw.com
         skidder@ktbslaw.com
         nmaoz@ktbslaw.com

*Attorneys for Aylstock, Witkin, Kreis & Overholtz, PLLC*

## CERTIFICATE OF SERVICE

      The undersigned certifies that the forgoing was served upon those parties registered to receive ECF notifications in the case on November 5, 2021.

**OFFIT KURMAN, P.A.**

/s/ Paul R. Baynard
Paul R. Baynard (NC Bar No. 15769)
301 South College Street, Suite 2600
Charlotte, North Carolina 28202
Telephone:    (704) 377-2500
Email:    Paul.Baynard@offitkurman.com